# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID L. CRAINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   **MEMORANDUM OPINION, ORDER,** |
| | )   **AND RECOMMENDATION** |
| HARTFORD LIFE AND ACCIDENT | ) |
| INSURANCE COMPANY, | )          1:08CV586 |
| The Group Long Term Disability | ) |
| Plan for Employees of R. F. MICRO | ) |
| DEVICES, INC., and R. F. | ) |
| MICRO DEVICES, INC., as | ) |
| Plan Administrator, | ) |
| | ) |
| Defendants. | ) |

This case arises from a dispute between Plaintiff David L. Craine and Defendants Hartford Life and Accident Insurance Company ("Hartford"), The Group Long Term Disability Plan for Employees of R.F. Micro Devices, Inc. ("the Plan"), and R.F. Micro Devices, Inc. ("R.F. Micro"), concerning the denial of long-term disability ("LTD") benefits. The matter is before the court on the following motions: (1) Plaintiff's motion for summary judgment (docket no. 47); (2) Defendants' motion for summary judgment (docket no. 54); (3) Plaintiff's motion for leave to file excess pages for Plaintiff's brief in support of motion for summary judgment (docket no. 49); (4) Plaintiff's motion to supplement Administrative Record (docket no. 50); and (5) Defendants' motion to strike the Affidavit of Robert G. McIver and the materials attached (docket no. 57). The parties have responded in opposition to the

respective motions.  Thus, the motions are ripe for disposition.  The parties have not consented to the jurisdiction of the magistrate judge; therefore, all dispositive motions must be addressed by recommendation.

For the following reasons, I will grant the motion to strike the McIver Affidavit and supplemental materials.  To this extent, Plaintiff's motion to supplement the Administrative Record is denied.  Furthermore, I will grant Plaintiff's motion for leave to file excess pages.  Finally, I will recommend that the court grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment.

## I. BACKGROUND

Plaintiff filed his original complaint on August 21, 2008, seeking entitlement to LTD benefits under an employee benefit plan ("the Plan") in which he was a member and participant.  The parties agree that the Plan is governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq.  Plaintiff named Hartford Life and Accident Insurance Company ("Hartford") as the sole Defendant in the original complaint.  Plaintiff amended the complaint on December 16, 2009, naming Plaintiff's former employer R.F. Micro and The Group Long Term Disability Plan for Employees of R.F. Micro Devices, Inc. as co-Defendants.  The court has dismissed all claims except for the claim against Hartford for wrongful denial of LTD benefits.

On August 30, 2010, Plaintiff filed a motion for summary judgment (docket no. 47) and a brief in support of the motion (docket no. 48).  On the same day, Plaintiff

filed a motion for leave to file excess pages (docket no. 49), a motion to supplement the Administrative Record (docket no. 50), and a brief in support of that motion (docket no. 51).  On August 30, 2010, Defendants also filed a motion for summary judgment (docket no. 54).  On September 23, 2010, Defendants filed a motion to strike the affidavit of Robert G. McIver and the materials attached (docket no. 57).

## II.  FACTS[1]

Plaintiff David L. Craine was employed by R.F. Micro from February 2006 to February 2007.  Plaintiff was at all relevant times a participant in R.F. Micro's Benefit Plan, a group benefit plan.  R.F. Micro is designated in the Plan documents as the Plan administrator.  Defendant Hartford issued the policy to R.F. Micro.  Hartford collected insurance premiums from R.F. Micro to furnish plan benefits, including LTD benefits.  Under the Plan, Hartford has full discretion and authority to determine benefits.  The parties agree, therefore, that Defendant Hartford is the Plan fiduciary.

Hartford's Disability Insurance Policy

The definitions section of the Plan and policy document contains definitions common to ERISA plans.  The policy states, specifically:

- **Disability** or **Disabled** means that during the Elimination Period and for the next 24 months you are prevented by:

---

[1] This Recommendation contains numerous citations to the Administrative Record. The Administrative Record contains all documents and information reviewed, considered, and relied on by Hartford in the administrative review of Plaintiff's claim for LTD benefits, leading up to its final determination dated April 15, 2008.  A copy of the Administrative Record is filed in paper form with the court.  Citations to the Administrative Record will be made to the Bates-stamp number on the documents (*e.g.*, H-CRAINE-0001).

(1) accidental bodily injury;
(2) sickness;
(3) Mental Illness;
(4) Substance Abuse; or
(5) pregnancy,

from performing one or more of the Essential Duties of Your Occupation, and, as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-Disability Earnings.

After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation. [H-CRAINE-0044.]

- **Your Occupation**, if used in this Booklet-certificate, means your occupation as it is recognized in the general workplace.   Your [o]ccupation does not mean the specific job you are performing for a specific employer or at a specific location.  [H-CRAINE-0050.]

- **Essential Duty** means a duty that:

   1.  is substantial, not incidental;
   2.  is fundamental or inherent to the occupation; and
   3. cannot be reasonably omitted or changed.

To be at work for the number of hours in your regularly scheduled workweek is also an Essential Duty. [H-CRAINE-0045.]

- We may request Proof of Loss throughout your Disability.  [H-CRAINE-0040.]

- All proof submitted must be satisfactory to us.  [*Id.*]

- We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy.  [H-CRAINE-0043.]

- **We**, **us** or **our** means the Hartford Life and Accident Insurance Company.  [H-CRAINE-0049.]

<u>Plaintiff's Employment with R.F. Micro</u>

In February 2006, Plaintiff began working as a Commodity/New Technology Sourcing Manager for R.F. Micro in Greensboro, North Carolina. On February 23, 2007, Plaintiff ended his employment with R.F. Micro, complaining of fatigue, chronic pain, and cognitive impairment. (*See* H-CRAINE-0393, 0400.) On or about the time that he left his work in February 2007, Plaintiff submitted an application for short-term disability benefits, which R.F. Micro paid through approximately August 2007. (*See* Amended Compl. ¶¶ 11-15.)

At around the time he ended his employment, Plaintiff was diagnosed with toxic encephalopathy resulting from exposure to mold mycotoxins. (*See* H-CRAINE-0365, 0400.) Plaintiff attempted to obtain an accommodation from R.F. Micro to work from his home so that he would not be exposed to mold toxins in the R.F. Micro facility. In connection with this attempt, Plaintiff's treating physician, Dr. Neal Speight, wrote two letters, in January and February 2007, supporting Plaintiff's ability to work productively at home, as long as Plaintiff could avoid exposure to mold at the R.F. Micro facility and to persons who had been in the facility and who could be carrying mold mycotoxins. (H-CRAINE-0365, 0368-69.) R.F. Micro denied Plaintiff's request to work from home.

In July 2007, Plaintiff submitted an application to Defendant Hartford for LTD benefits. (H-CRAINE-0393.) In connection with his application, Plaintiff submitted medical records and information from Dr. Speight. Included in the information was

an Attending Physician Statement ("APS") completed by Dr. Speight on March 29, 2007. (H-CRAINE-0379.) In the APS, Dr. Speight stated that Plaintiff "can be cognitively functional if he is allowed to stay away from mold and mold mycotoxins. As such, the most controlled environment would be from home. In this environment he should be able to function approximately 6-8 hours daily as a productive worker." (*Id.*) Dr. Speight concluded: "I do believe [Plaintiff] should be allowed to work from home and may start now. I do not however believe he should be forced to return to this mycotoxin environment." (*Id.*)

Plaintiff also provided medical records and information from Dr. Ritchie Shoemaker, who began treating Plaintiff in May 2007. According to the APS form completed by Dr. Shoemaker in July 2007, Plaintiff's primary diagnosis was toxic encephalopathy. (H-CRAINE-0292-93.) Dr. Shoemaker indicated that Plaintiff was not restricted or limited in the areas of sitting, standing, walking, etc., but that he

> may not work in any building with a history of water intrusion and amplified microbial growth or [be] exposed to items that may have been moved from a mold [a]ffected area, areas that may have been cross-contaminated by any affected materials or come in contact with individuals that may have come in contact with affected buildings, materials, etc.

(*Id.*)

After receipt of the APS from Dr. Shoemaker, Hartford wrote a letter dated August 28, 2007, to Dr. Shoemaker, asking if Plaintiff could perform his occupation in a mold-free environment. (H-CRAINE-0281-82.) Dr. Shoemaker responded in a letter dated September 4, 2007, that Plaintiff could perform his occupation in a mold-

free environment, as long as Plaintiff could be provided "with change of position accommodations." (H-CRAINE-0276-77.)

By letter dated September 11, 2007, Hartford denied Plaintiff's LTD benefits claim. (H-CRAINE-0269.) Hartford based its decision on the fact that both of Plaintiff's treating physicians (Dr. Speight and Dr. Shoemaker) opined that Plaintiff could perform his occupation in a mold-controlled environment. (*See* H-CRAINE-0272-73.) Hartford explained in its denial letter that the policy's definition of "Your Occupation" was not limited to a claimant's job with a specific employer or at a specific location. (H-CRAINE-0270.) Hartford explained that because Plaintiff could perform the essential duties of his occupation in a mold-free environment, he did not qualify for LTD benefits under the terms of the policy. (H-CRAINE-0158.)

On February 15, 2008, Plaintiff appealed Hartford's decision denying LTD benefits. (H-CRAINE-0273.) As part of his appeal, Plaintiff submitted new medical evidence and a report by Dr. Grace Ziem, who Plaintiff first went to visit in October 2007, after receipt of his denial of LTD benefits in September 2007. (H-CRAINE-0217.) Following an initial examination, testing, and consultation, Dr. Ziem prepared a report dated October 30, 2007. Dr. Ziem documented Plaintiff's medical history as it was conveyed to her by Plaintiff. She also administered a "serial sevens" test to assess Plaintiff's cognitive impairment. (H-CRAINE-0217.) Regarding Plaintiff's neurocognitive evaluation, Dr. Ziem noted:

[Plaintiff] had significant reduction in attention span using digit span recall. He had very significant reduction and difficulty with complex mental tasks using serial 7s and also difficulty with other complex mental tasks. He had very significant difficulty with recalling a simple name and address both immediately and five minutes later. His cognitive function was greatly below that expected for the high level of his professional abilities.

(H-CRAINE-0217.)

Dr. Ziem concluded: "At this time [Plaintiff's] severe, frequent and multiple symptoms are too severe for him to be able to do regular work from his home. He is at present totally disabled from work outside of his home and unable to sustain regular work form [sic] his home." (H-CRAINE-0219.) Dr. Ziem also completed an APS, indicating Plaintiff's diagnosis as toxic encephalopathy and reactive airway disease. (H-CRAINE-0163.) She indicated that the onset of Plaintiff's condition was February 15, 2007. (*Id.*)

After receiving the documents submitted by Plaintiff, Hartford engaged the services of Dr. Philip Adamo to review Plaintiff's case. As part of his review, Dr. Adamo spoke with Dr. Ziem and Dr. Shoemaker. According to Dr. Adamo's report, Dr. Shoemaker opined that Plaintiff could not work in "an environment that has had water damage." (H-CRAINE-0116.) Similarly, according to Dr. Adamo's report, Dr. Ziem opined that "as long as he is not in the presence of any neurotoxic agents, then he can perform cognitively well." (H-CRAINE-0113.)

Dr. Adamo observed that most of the lab tests documented in Plaintiff's medical records had normal results, while others were "investigational," and others

had "no clinical relevance."  (H-CRAINE-0110, 0112, 0117.)  Moreover, Dr. Adamo characterized Dr. Ziem's neurocognitive "serial sevens" testing as a "screening" test, rather than as a full neurocognitive evaluation. (H-CRAINE-0119.)  Dr. Adamo noted that conventional testing for any immune-mediated disease, reactive airway disease, or allergies had not been performed.  (H-CRAINE-0117.)  Dr. Adamo commented in his report that, while scientific literature supports a link between indoor mold and respiratory symptoms while exposed, the American College of Occupational and Environmental Medicine ("ACOEM") has found little evidence that exposure to mold mycotoxins causes permanent adverse health problems.  (H-CRAINE-0118.)  Dr. Adamo concluded that there was no objective support for cognitive or functional restrictions and limitations for Plaintiff.  (H-CRAINE-0119.)

By letter dated April 15, 2008, Hartford affirmed the denial of Plaintiff's claim for LTD benefits.  (H-CRAINE-0101.)  In response to Hartford's renewed denial of Plaintiff's claim for LTD benefits, on July 11, 2008, counsel for Plaintiff forwarded additional information to Hartford to supplement Plaintiff's appeal.  This information included an affidavit submitted by counsel Robert G. McIver, in which McIver attested, among other things, that Dr. Adamo had mischaracterized the statements of Plaintiff's treating physicians Dr. Shoemaker and Dr. Ziem regarding Plaintiff's impairments and whether Plaintiff is able to work in his usual occupation.

On July 23, 2008, Hartford again rejected Plaintiff's claim, noting that the administrative appeal for the matter was closed. Thus, Hartford declined to review the submitted information and returned it to Plaintiff's counsel.

## III. DISCUSSION

A. Plaintiff's Motion to Supplement the Record and Defendants' Corresponding Motion to Strike the Affidavit of Robert G. McIver and Materials Attached

Before addressing the substance of the parties' respective summary judgment motions, the court must first address two other pending motions. First, Plaintiff has filed a motion to supplement the Administrative Record. In support of the motion, Plaintiff has submitted the Affidavit of Plaintiff's counsel Robert G. McIver. Attached to the Affidavit are documents submitted by Plaintiff to Hartford on July 11, 2008. According to Plaintiff, these materials detail discrepancies and misstatements made in the report contained in the Administrative Record by Dr. Adamo. Plaintiff advocates the introduction of this evidence to show that Dr. Adamo misstated his conversations with two of Plaintiff's treating physicians (Dr. Shoemaker and Dr. Ziem) and that he mischaracterized the medical evidence in the record. Specifically, Plaintiff contends that Dr. Adamo's report contains "numerous material misstatements, omissions and errors in connection with his interview with the doctors." (*See* docket no. 51, Pl.'s Br. Supp. Mot. Supp., p. 4.) It is undisputed that these materials were not part of the Administrative Record, and Hartford did not consider them on Plaintiff's appeal of Hartford's initial denial of benefits. Indeed,

10

Plaintiff attempted to present these materials after Hartford had completed its administrative review and final decision.

Defendant Hartford has, in turn, filed a motion to strike the McIver affidavit, and Defendant opposes Plaintiff's motion to supplement the Administrative Record. In support of the motion to strike and in opposition to the motion to supplement the Administrative Record, Hartford contends that the proposed supplemental materials are inadmissible because this court is only permitted to review the Administrative Record–that is, the evidence that was before Hartford when it made the decision to deny Plaintiff's LTD benefits–in determining whether Hartford abused its discretion in denying LTD benefits. I agree. As Defendant Hartford notes, under well-established Fourth Circuit precedent, where a court is reviewing for abuse of discretion in an ERISA case involving denial of disability benefits, the scope of admissible evidence is limited to the Administrative Record, *i.e.*, all information that was before the claims administrator or fiduciary when it made its determination. *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 608-09 (4th Cir. 1999); *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788-90 (4th Cir. 1995); *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994).

Here, Plaintiff has not shown why the court should grant an exception to the well-established rule that when a court is reviewing a denial of ERISA benefits for abuse of discretion, the court may not consider evidence that was not before the administrator or fiduciary. Plaintiff cites to *Quesinberry v. Life Insurance Co.* as

support for his motion to supplement the Administrative Record. 987 F.2d 1017, 1025 (4th Cir. 1993). In *Quesinberry,* however, the Fourth Circuit was conducting a *de novo* review of the administrator's decision. The *Quesinberry* rule simply does not apply when the court is reviewing for abuse of discretion. *See also Bartel v. Sun Life Assurance Co. of Can.*, 536 F. Supp. 2d 623, 631 (D. Md. 2008) (noting that "[a] district court has discretion to allow evidence that was not before the plan administrator only when a *de novo* standard applies, and even then, only in exceptional circumstances, where such 'additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision'") (citing *Quesinberry*, 987 F.2d at 1025).

Plaintiff also cites *Brodish v. Federal Express Corp.*, 384 F. Supp. 2d 827, 833-34 (D. Md. 2005) in support of his motion to supplement the Administrative Record. In *Brodish*, after the administrative review was concluded, the defendant administrator advised the plaintiff's counsel that he could submit additional information. *Id.* at 834. The district court found that the defendant's denial of reconsideration after allowing the plaintiff to submit additional information constituted another "final determination," and all facts and information leading up to that new, final determination were part of the administrative record. *Id.* at 835.

Although the district court opinion in *Brodish* does not make clear whether the administrator actually considered the additional information, the *Brodish* court reasoned that the information could be considered as part of the administrative

record because the administrator had "ample time . . . to review the evidence; plainly, defendants were not caught by surprise with new evidence in the midst of a lawsuit." *Id.* at 835. By contrast, here, Hartford specifically declined to re-open the administrative review and returned the information to Plaintiff's counsel without review. In any event, to the extent that the district court in *Brodish* allowed evidence that the administrator did not actually review in making its benefits decision, *Brodish* is contrary to Fourth Circuit precedent.

Plaintiff also suggests in his brief in support of the motion to supplement the administrative record that Defendant Hartford's failure to consider the additional evidence after it concluded its appeal and closed the record in effect denied Plainitff the right to "a full and fair review." I do not agree. Hartford's administrative review fully complied with the applicable regulations. That is, Hartford's initial review ended with its notification to Plaintiff of its determination regarding Plaintiff's claim, in compliance with 29 C.F.R. § 2560.503-1(f) and (g). Hartford then provided Plaintiff with an opportunity to appeal. *See id.* § 2560.503-1(h)(2)(ii)-(iii), (h)(3)(I), (h)(4). Hartford's administrative appeal level review included its review of all submissions by Plaintiff and a consultation with a medical professional. *Id.* § 2560.503-1(h)(2)(iv), (h)(3)(iii), and (h)(4). Hartford then timely notified Plaintiff that it was upholding its initial benefits determination. *Id.* § 2560.503-1(l) and (j). Nothing in ERISA or its regulations requires the claims fiduciary to allow additional levels of administrative appeals and review beyond that provided in the regulations. In any event, as

Defendant notes, even if Hartford had committed procedural error in its administrative review, allowing extrinsic evidence to be submitted to the court for consideration would not be the appropriate remedy. Instead, the proper course would be a remand to Hartford for further review. *Elliott*, 190 F.3d at 609; *Wertheim v. Hartford Life Ins. Co.*, 268 F. Supp. 2d 643, 660 (E.D. Va. 2003). Because Hartford did not commit procedural error, remand is not appropriate in this case.

Plaintiff also takes issue with the fact that Hartford sought a medical review with Dr. Adamo after Plaintiff appealed the initial denial of benefits. Hartford's commission of a medical record review by Dr. Adamo during Plaintiff's administrative appeal review was in compliance with the ERISA regulations. Indeed, the regulations state that the claims fiduciary "shall consult with a health care professional" when "deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment." 29 C.F.R. § 2560.503-(1)(h)(3)(iii), (h)(4). Thus, Hartford was required to consult with a medical consultant such as Dr. Adamo in order to perform its fiduciary duties in its administrative appeal review of Plaintiff's benefits claim.

Plaintiff also complains in his brief that Hartford did not give Plaintiff an opportunity to review and rebut Dr. Adamo's report before its final decision. Neither ERISA nor its regulations, however, required Hartford to notify Plaintiff of its consultation with Dr. Adamo before Hartford made its final appeal determination. Furthermore, there is no requirement in ERISA disability cases that claimants must

be provided with an opportunity to review and rebut the opinion of a reviewing consultant. *See Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1166-68 (10th Cir. 2007) (noting the district court's observation that such requirement would result in an "endless loop" of opinions by consultants and rebuttals by plaintiffs' experts, thus prolonging the appeal process). Hartford's failure to give Plaintiff an opportunity to review and rebut Dr. Adamo's report before its final decision was not in violation of ERISA or its regulations.

In sum, for the reasons stated herein, I will grant Defendants' motion to strike the McIver Affidavit and deny Plaintiff's motion to supplement the Administrative Record.

B. Motions for Summary Judgment

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return

a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

## C.  Standard of Review for Denial of ERISA Benefits

When a summary judgment motion involves a denial of benefits under an employee benefit plan governed by ERISA, the court applies an established framework specific to ERISA benefit cases.  Under ERISA, if language in the relevant plan documents grants the plan administrator or fiduciary discretion to interpret the plan's provisions or determine entitlement to benefits, a reviewing court should reverse the administrator's or fiduciary's decision only if the administrator or fiduciary abused its discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989).  In applying the abuse of discretion standard of review, a court should uphold the administrator's or fiduciary's decision if it was reasonable under the circumstances–*i.e.*, if it was the result of a deliberate, principled reasoning process and if it was supported by substantial evidence. *See Bernstein*, 70 F.3d at 788.

16

In cases such as this one, in which Hartford has the discretion to award benefits and is also the payer of benefits under the policy–and, thus, has a monetary incentive to deny claims–the court presumes that a conflict of interest exists, and that conflict must be weighed as a factor in determining whether there was an abuse of discretion in denying benefits. *Bernstein*, 70 F.3d at 788; *Bruch*, 489 U.S. at 115. The existence of a conflict of interest, however, is only one factor to be considered in assessing the reasonableness of the decision under the abuse of discretion standard. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115-17 (2008); *Champion v. Black & Decker (U.S.), Inc.*, 550 F.3d 353, 359 (4th Cir. 2008). In *Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000), the Fourth Circuit identified eight, nonexclusive factors that a court may consider, including a conflict of interest, in determining whether the administrator or fiduciary abused its discretion in denying benefits:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id.* at 342-43 (footnote omitted).

Therefore, the court must review Hartford's benefits determination in this case for abuse of discretion, taking into account any conflict of interest as one of the factors considered in determining reasonableness.

D. Analysis

After considering the noted *Booth* factors, as well as Hartford's inherent conflict of interest as both the payer of the benefits and the plan fiduciary, I find that Hartford did not abuse its discretion in denying LTD benefits to Plaintiff.   In sum, in light of the evidence in the Administrative Record, Hartford made a reasoned decision, supported by substantial evidence, that Plaintiff failed to meet his burden of showing that he is entitled to LTD benefits under the Plan policy.   Here, substantial evidence supports Hartford's decision that Plaintiff can perform his own occupation as it is recognized in the general workplace.  The Administrative Record shows that two of Plaintiff's treating physicians indicated that Plaintiff could perform his regular occupation in a mold-controlled environment.   Thus, even if Plaintiff cannot work for RF Micro's Greensboro facility, given its history of mold intrusion, the record evidence shows that Hartford reached a reasonable conclusion that Plaintiff can still perform his own occupation, as recognized in the general workplace, as long as he is not exposed to mold and mold allergens.  *See, e.g., Ceasar v. Hartford Life & Accident Ins. Co.*, 947 F. Supp. 204, 207-08 (D.S.C. 1996) (where the plaintiff suffered from sleep apnea, which affected his ability to handle rotating shifts at his employer's manufacturing facility, holding that the administrator did not abuse its

discretion in denying benefits based on the administrator's finding that rotating shifts was not a material and substantial duty of the plaintiff's occupation as it exists in the national economy, even though the plaintiff's employer required the plaintiff to work rotating shifts); *McCready v. Standard Ins. Co.*, 417 F. Supp. 2d 684, 699 (D. Md. 2006) (noting that the administrator was not bound by the employer's description of the plaintiff's job in determining whether the plaintiff could perform the "material duties" of her "own occupation" under the terms of the policy).

Plaintiff contends that, in denying LTD benefits, Hartford improperly relied solely on the report of Dr. Adamo. Plaintiff further contends that Dr. Adamo's analysis was biased and "defective and provides insufficient evidence to deny the claim."[2] (docket no. 48, Pl.'s Br. Mot. Summ. J., p. 24.) The court has considered both Hartford's conflict of interest as well as Plaintiff's contention that Dr. Adamo was biased in his conclusions.[3] While Plaintiff alleges that Hartford issued a decision

---

[2] As part of his "bias" argument, Plaintiff makes much of the fact that Dr. Adamo did not examine or speak to Plaintiff before issuing his report, but that he, instead, telephoned Plaintiff's treating physicians. Be that as it may, still nothing in ERISA requires the independent review physician to personally examine the benefits claimant.

[3] In the motion to supplement the Administrative Record, Plaintiff attempted to introduce evidence that Dr. Adamo misstated his conversations with Plaintiff's treating physicians. Since this information was not part of the Administrative Record, the court does not consider it. In any event, even aside from Dr. Adamo's report, the Administrative Record contains statements by two of Plaintiff's physicians concluding that Plaintiff could work in his usual occupation as long as he is not exposed to mold and mold allergens and that his symptoms lessen when he is not exposed to mold. Thus, Dr. Adamo's report does not in any material way misinterpret his conversations with Plaintiff's treating physicians. As to Dr. Adamo's report of his conversation with Dr. Ziem, the court here accepts that Dr. Ziem has stated that Plaintiff is permanently disabled, and Hartford also noted this in its denial letter. Thus, even if Dr. Adamo mischaracterized Dr. Ziem's statements in his report, this fact did not affect Hartford's decision to deny LTD benefits.

wholly based on Dr. Adamo's report, Hartford's denial letter clearly indicates otherwise. That is, Hartford relied not only on Dr. Adamo's report, but also on statements by Plaintiff's treating physicians Dr. Speight and Dr. Shoemaker. For instance, in affirming the denial of benefits, Hartford noted Dr. Speight's March 2007 statement, in which Dr. Speight opined that Plaintiff is cognitively functional if he is allowed to stay away from mold and mold toxins, and that if Plaintiff were not exposed, he could work 6 to 8 hours a day, to a maximum of 30 hours per week. Hartford also relied on Dr. Shoemaker's July 2007 statement, in which Dr. Shoemaker opined that Plaintiff cannot work in any building with a history of water intrusion and amplified microbial growth or be exposed to items that may have been moved from a mold-affected area, areas that have been cross-contaminated by any affected materials, or have come into contact with individuals who may have come in contact with affected buildings, materials, etc.

Furthermore, Hartford noted in its decision denying benefits that in August 2007 Hartford asked Dr. Shoemaker to clarify whether Plaintiff could perform the duties of his own occupation in a mold-free environment. Dr. Shoemaker responded that Plaintiff could in fact perform the duties of his own occupation as long as he had a change of position accommodation. Finally, the Administrative Record shows that Hartford also based its decision, in part, on the fact that most of Plaintiff's lab results were normal, and that the abnormal ones confirmed that Plaintiff had allergy/asthmatic related symptoms with mold being the potential culprit. Thus, it is

simply not true that Defendant relied solely on Dr. Adamo's opinions regarding Plaintiff's impairments and Dr. Adamo's opinion that Plaintiff did not suffer from long-term disability.

Significantly, Plaintiff complains of his cognitive impairment as a major debilitating factor, but Hartford found that Plaintiff did not produce sufficient objective evidence that he is cognitively impaired to such a level of severity as to render him unable to perform his own occupation.  In reaching this conclusion, Hartford relied in part on Dr. Adamo's report, noting that Dr. Ziem's "serial sevens" test, which Dr. Adamo characterized as no more than a "screening" test, was the only testing performed to measure Plaintiff's cognitive impairment, and no comprehensive evaluation was performed.  Here, Hartford did not abuse its discretion in finding that Plaintiff failed to present sufficient objective measurement as to the extent of his cognitive difficulties. *Accord Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 274-75 (4th Cir. 2002) (where the court held that the plaintiff failed to present objective evidence showing that his pain from degenerative disc disease was severe enough to prevent him from performing the duties of his occupation); *see also Nicely v. UNUM Life Ins. Co.*, No. 1:08cv509, 2009 WL 5201852, at *10 (M.D.N.C. Dec. 23, 2009) (noting that the plaintiff's cognitive complaints were not supported by objective evidence of cognitive deficiencies).  Given the lack of objective evidence of Plaintiff's cognitive impairment, coupled with the conclusions of two of Plaintiff's treating

physicians regarding Plaintiff's ability to work when he is not exposed to mold, Hartford's denial of LTD benefits was not an abuse of discretion.

Furthermore, Hartford did not abuse its discretion in rejecting Dr. Ziem's differing conclusion regarding the permanence of Plaintiff's impairment. As Defendant notes, Dr. Ziem first examined Plaintiff after the initial denial of LTD benefits. Significantly, Dr. Ziem declared that Plaintiff was disabled as of February 2007 (when he left his employment with R.F. Micro), even though her first examination of him was not until October 2007. (H-CRAINE-0163.) Although Plaintiff contends that Dr. Adamo was biased *against* the award of LTD benefits to Plaintiff, it can also be assumed that a treating physician such as Dr. Ziem could be biased *towards* the award of LTD benefits, particularly where the treating physician first examined a claimant only after an initial denial of LTD benefits. *See, e.g., Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003) ("[I]f a consultant engaged by a plan may have an incentive to make a finding of not disabled, so a treating physician, in a close case, may favor a finding of disabled.") (internal quotations omitted); *see also Abromitis v. Cont'l Cas. Co.*, 261 F. Supp. 2d 388, 391 (W.D.N.C. 2003) (noting that "[w]hile claimants generally lack the resources enjoyed by defending companies, they, too, are frequently referred to physicians and consultants who benefit from referrals from the plaintiffs' bar").

In sum, Defendant Hartford's decision clearly came down to a permissible judgment call between conflicting medical opinions, and Hartford's rejection of Dr.

Ziem's opinion regarding Plaintiff's disability was not an abuse of discretion.[4] *See*

*Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 234 (4th Cir. 1997) (abrogated on other

grounds) (finding no abuse of discretion in the fiduciary's denial of benefits where the

plaintiff's primary medical provider's finding of disability conflicted with reports by an

independent panel of medical specialists).

Finally, I note that although this court could potentially reach a different

conclusion under a *de novo* standard of review, it is important to keep in mind the

abuse of discretion standard of review, as described by the Fourth Circuit:

> At its immovable core, the abuse of discretion standard requires a
> reviewing court to show enough deference to a primary decision-
> maker's judgment that the court does not reverse merely because it
> would have come to a different result in the first instance. The
> deference that is the hallmark of abuse-of-discretion review is
> deference enough to appreciate reasonable disagreement.

*Evans v. Eaton Corp. LTD Plan*, 514 F.3d 315, 322 (4th Cir. 2008) (citations omitted)

(quotation marks omitted). In sum, for the reasons stated herein, Hartford did not

abuse its discretion in denying Plaintiff's claim for LTD benefits.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to strike Robert G. McIver's

Affidavit and materials attached (docket no. 57) is **GRANTED**; Plaintiff's motion to

---

[4] Even though Dr. Ziem opined that Plaintiff was too disabled to work even out of his home, she nevertheless acknowledged that Plaintiff's symptoms decreased when he was not exposed to mold. (H-CRAINE-0219, "Clinical improvement and function can be achieved with careful environmental controls that he utilizes at home and medical treatment in a test-based manner.")

supplement the Administrative Record (docket no. 50) is **DENIED**; and Plaintiff's

motion to file excess pages is **GRANTED** (docket no. 49). Furthermore, it is

**RECOMMENDED** that the court **DENY** Plaintiff's motion for summary judgment

(docket no. 47) and **GRANT** Defendants' motion for summary judgment (docket no.

54).

_____
WALLACE W. DIXON
United States Magistrate Judge

March 25, 2011